**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-02253

BAKA BALABANIAN,

    Plaintiff,

v.

PARK MEADOWS MALL LLC,
GENERAL GROWTH PROPERTIES, INC.,
GODIVA CHOCOLATIER, INC., and
SOLEX CONTRACTING, INC.,

    Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Baka "Peggy" Balabanian alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

**PARTIES**

1.    Plaintiff Balabanian is a natural person and resident of the State of Colorado.

2.    Defendant Park Meadows Mall LLC ("PMM") is a Delaware limited liability company with its principal place of business located at 110 North Wacker Drive, Chicago, Illinois 60606. Defendant PMM is registered to conduct business in Colorado and operates a shopping center in Lone Tree, Colorado, known as Park Meadows Mall.

3.    Defendant General Growth Properties, Inc. ("GGP") is a Delaware corporation with its principal place of business located at 110 North Wacker Drive, Chicago, Illinois 60606.

1

Defendant GGP is registered to conduct business in Colorado and operates Park Meadows Mall together with Defendant PMM.

4. Defendant Godiva Chocolatier, Inc. is a New Jersey corporation with its principal place of business located at 333 West 34th Street, New York, New York 10001. Defendant Godiva is registered to conduct business in Colorado.

5. Defendant Solex Contracting, Inc. is a California corporation with its principal place of business located at 42146 Remington Avenue, Temecula, California 92590. Defendant Solex is registered to conduct business in Colorado.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are citizens of different States.

7. This Court has personal jurisdiction over Defendants because they are registered to conduct business in this District, they conduct significant business in this District, and the negligent conduct alleged in the Complaint occurred in, was directed to, and emanated from this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amount of business transactions within this District and because the negligent conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff Balabanian resides in this District (specifically, in Highland Ranch, Colorado).

## FACTUAL BACKGROUND

9. Plaintiff Baka "Peggy" Balabanian is a 75-year-old grandmother who, along with her husband and children, literally embodies the American dream. Indeed, Peggy, her husband Sarkis, and her daughters Tina and Arlet, are all naturalized citizens who fled to the United States from Beirut, Lebanon in 1975 during the midst of the Lebanese Civil War. As Armenian Christians, the Balabanians were among the religious minority in Lebanon that was caught between warring factions. Eventually sponsored by her sister, Nora, the Balabanians settled in Boulder, Colorado where they lived for the next 25 years before moving to Highlands Ranch, Colorado, where they live currently. During that time, and up until their retirement at 65, Peggy and Sarkis worked tirelessly to make a life for their family and through their years of hard work, the Balabanians were able to realize their dreams of living in a free country and giving their children a better life.

10. Peggy is the matriarch of her family. Over the years, she not only took the lead in raising the children, but she was the primary care giver for her mother and mother-in-law. In present day terms, Peggy is still the person primarily responsible for taking care of her household, which now includes her daughter, son-in-law and two grandchildren, in addition to her husband. And, with respect to her husband Sarkis—who has a number of health problems, including COPD, heart disease, diabetes and hypertension and will be turning 80 years old in January—Peggy is also the primary care giver.

11. And in terms of her duties in the household, Peggy does the cooking, much of the cleaning, making sure her two grandchildren are doing their homework, and getting to dance

3

class (as to her granddaughter Grace) and rowing (as to her grandson Charlie) on time. In short, for going on 60 years, Peggy is responsible for making the household run smoothly.

12. Peggy's duties are vital to the house functioning properly because her daughter Tina, who is an executive with Fidelity National Title, and son-in-law, a gospel musician, are extremely busy and unable to undertake those duties. Indeed, it seems that any time Peggy is out of town, for example, visiting her son (the undersigned) in California, or even just under the weather, her household shuts down.

13. Peggy has also always been and continues to be a fixture in her community. She has always been an active member of her church and has a wide network of friends. And that has always been the case. Indeed, upon emigrating to the United States, Peggy opened a day care where she took care of dozens of children, from infants to toddlers, for more than a decade. To this day, Peggy receives visits, cards and invitations to weddings and baby showers from the kids (now adults) she took care of all those years ago and is still in regular contact with the parents of those kids, almost all of whom still praise her for how well she took care of their kids.

14. Peggy is also someone who enjoys places like shopping malls. Indeed, growing up poor in a far distant land, the concept of shopping malls or even super markets where normal people—not just the wealthy—had access to such vast amounts of consumers goods and provisions, was something truly extraordinary and demonstrative of the greatness of America. Thus, a frequent story that Peggy tells about her days of babysitting was that every Saturday—after collecting her wages for the week—Peggy would take her children to the Pearl Street or then Crossroads Malls in Boulder to do some shopping. And to this day, many of Peggy's days in retirement are spent frequenting her local shopping mall and Costco.

15. Ever since Peggy moved to Highlands Ranch some 15 years ago, she has visited Defendants PMM's and GGP's Park Meadows Mall in Lone Tree, Colorado. Peggy is a frequent patron of Park Meadows Mall because it is so close to her home and because her sister used to own a women's boutique in it for a number of years. She's such a regular at the mall, that store clerks address her by her first name and express concern if she hasn't been at the mall for a few days.

16. On September 30, 2015, Peggy went to Park Meadows Mall with her husband to do a little shopping. Unfortunately, while Peggy was walking in the Mall (at approximately 9:30 AM, during normal business hours), she slipped on a wet and slippery substance that was on the floor directly in front of Defendant Godiva's retail store, severely fracturing her wrist.

17. As it turns out, at the time of Peggy's fall, Defendant Godiva had work being performed on the façade of its storefront and, upon information and belief, the substance on the floor was related to the work that was taking place. Specifically, at that time, Defendant Godiva's retail storefront was undergoing repairs by Defendant Solex, a construction company that specializes in retail construction, management, and maintenance.

18. Defendants each knew of the unsafe conditions and the threat they posed to Mall customers because the work was taking place during regular business hours and it was foreseeable that someone could be injured if passing by the work zone.

19. As soon as Peggy fell, several individuals rushed to her side, including an employee from a nearby Starbucks and a friend. Also shortly after the fall, Defendants' PMM's and GGP's employees approached the scene and erected "caution" and/or other warning signs

and cordoned off the area—which up until that point had not been done—alerting people to the hazardous condition on the floor, which caused Peggy's fall.

20. The Starbucks employee, Peggy's friend, and other Mall patrons each witnessed the oil-like substance on the floor and observed, more generally, the hazardous conditions caused by work on Defendant Godiva's façade, and each of them further witnessed Defendants PMM's and GGP's employees cordon off the area and erect the warning signs referenced above.

21. Despite there being an active construction zone off a main walkway in a public mall and Defendants' knowledge of that fact, Defendants did not ensure that the storefront or the Mall more generally was free of construction equipment, debris, substances, or other hazards—which were all present at the scene of Peggy's fall. As noted above, Defendants did not so much as cordon off the area or put out any hazard signs, cones, or other safety warnings until after Peggy fell.

22. Ultimately, as a direct and proximate result of Defendants' negligence, Peggy suffered severe and permanent injuries that have not only had a debilitating effect on her physically, but also emotionally given her weakened physical state. Peggy required three surgeries to repair her severely fractured wrist spanning more than a year, with the first occurring on January 7, 2016, and thereafter on April 28, 2016, and February 9, 2017. Peggy incurred tens of thousands of dollars in medical bills for the surgeries, rehabilitation, and other physical therapy. Unfortunately, Peggy's physicians advised her that her wrist would never fully heal.

23. Peggy's weakened wrist has also led to her suffering other physical injuries through no fault of her own. Indeed, just over one year ago, on or about July 31, 2016, Peggy's

wrist gave out when she tried to put weight on it, causing her to fall and fracture her pelvis, which left her even more immobile for several months.

24.     Unfortunately, the damages Peggy suffered did not end with her fractured wrist and the related medical costs. After her injury, she could not use her right arm for nearly a year and half and, as such, was no longer able to be their primary provider and caregiver, and could not cook, clean, or otherwise manage the household. This affected Peggy and her entire family, including her daughter, an executive with a large-scale insurer, who had to take time away from work to care for her mother and family, as well as her son-in-law, a musician who had to divert his attention from work to care for his mother-in-law and family and thus, prevented from pursuing several employment opportunities.

25.     Peggy's life was also altered in other fundamental ways due to her injuries. Peggy was prevented from attending Church on a regular basis, something she has done her entire life from when she was a child. She also was prevented from seeing her friends and family on a daily basis, including those who she would visit with daily at the Park Meadows Mall.

## FIRST CAUSE OF ACTION
### Premises Liability Pursuant to Colorado Premises Liability Act
### (On Behalf of Plaintiff Against All Defendants)

26.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

27.     C.R.S. § 13-21-115 was enacted "to promote a state policy of responsibility by both landowners and those upon the land as well as to assure that the ability of an injured party to recover is correlated with his status as a trespasser, licensee, or invitee…." C.R.S. § 13-21-115(1.5)(a).

28. Defendants are authorized agents or persons in possession of real property and persons legally responsibility for the condition of real property or for the activities conducted or circumstances existing on real property and, therefore, qualify as "landowners" under C.R.S. § 13-21-115(1).

29. Park Meadows Mall is a shopping center that is open to the public during normal business hours. Plaintiff Balabanian's injury occurred while visiting the Park Meadows Mall during normal business hours and, therefore, qualifies as an "invitee" under C.R.S. § 13-21-115(5)(a).

30. Pursuant to C.R.S. § 13-21-115(3)(c), "an invitee may recover damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known."

31. Defendants had a duty to Plaintiff to prevent the creation and/or existence of a dangerous condition, including the accumulation of liquid substances on the floor where patrons of Defendants PMM's, GGP's, and Godiva's were to be walking, including the duty to monitor for such dangerous conditions.

32. As described above, Defendants knew or should have known of the dangerous conditions caused by Defendant Solex's construction on Defendant Godiva's retail storefront inside Defendants PMM's and GGP's Park Meadows Mall.

33. Ultimately, Defendants:

    a.    Failed to exercise due care to maintain the premises in a safe condition;

    b.    Failed to adequately inspect the premises;

    c.    Allowed an unsafe condition to exist on the premises;

  d. Failed to protect and make the premises safe for invitees; and

  e. Failed to warn Plaintiff of the dangerous condition on the floor when they knew or should have known in the exercise of ordinary care that said warning was necessary to prevent injury to Plaintiff.

34. As a direct and proximate result of Defendants' negligence, Plaintiff suffered permanent bodily injury and resulting pain and suffering, mental anguish, and will continue to suffer physical and permanent injuries, loss of enjoyment of life, along with past and future medical, hospital, and doctor bills, and other monetary damages. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Balabanian respectfully requests that this Court enter judgment:

  a) Awarding damages to Plaintiff in an amount to be determined at trial; and

  b) Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

              Respectfully submitted,

              **BAKA BALABANIAN**,

Dated: September 19, 2017      By: /s/ Rafey S. Balabanian
               One of Plaintiff's Attorneys

              Rafey S. Balabanian
              rbalabanian@edelson.com
              EDELSON PC
              123 Townsend Street, Suite 100
              San Francisco, California 94107

Tel: 415.212.9300
Fax: 415.373.9435

Sydney M. Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Baka Balabanian*